**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-386 (RBW)** |
| **v.** | : | |
| | : | |
| **TRICIA MONIQUE LACOUNT,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Tricia Monique LaCount to 60 days' incarceration, 12 months' supervised release, 60 hours of community service, $500 in restitution, and the mandatory $25 assessment.

## I.     Introduction

Defendant Tricia LaCount, a 54-year-old resident of Oklahoma, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

LaCount pleaded guilty to Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). The government's recommendation is supported by the defendant's (1) early entrance into the Capitol building (within minutes of the initial breach of the Senate Wing Door); (2) travel throughout the Capitol for an hour and 14 minutes, despite observing obvious signs of mayhem, including property destruction and pepper spray; (3) presence in sensitive areas of the Capitol, including the Office of the Speaker and the hallway just outside the House Floor; (4) social media postings describing her experience as "exhilarating" and stating that she had never "felt so patriotic"; (5) lack of remorse and continued social media postings spreading falsehoods about January 6, even after she pleaded guilty in this case.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of LaCount's crime support a sentence of 60 days' incarceration.

## II.      Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 37 (Statement of Offense), at 1-7.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*LaCount's Role in the January 6, 2021 Attack on the Capitol*

Tricia LaCount traveled from Oklahoma to attend the "Stop the Steal" rally. She stayed at a hotel in Virginia with several friends, including Traci Sunstrum.[2] A few days earlier, on January 2, 2021, LaCount sent a message on Facebook to her travel companions, writing "DC shitshow, here we come!!!!"

LaCount was aware that the Electoral College votes would be counted on January 6 at the U.S. Capitol. The morning of January 6, she responded to a message on Facebook stating, "It's up to Pence/Congress to certify the election or not." She added, "I'm on my way down there now!" In another message early that morning she wrote "we may need bail $$."

LaCount wore a black jacket, black pants, black boots, and a red scarf. She wrapped a red "Trump 2020" flag around her like a cape. After attending the rally, she walked to the U.S. Capitol.

At approximately 2:16 p.m., LaCount entered the Capitol through the Senate Wing Door, as shown below in Image 1 and Exhibit A at 3:54 to 4:44.

---

[2] Sunstrum (21-cr-00652 (CRC)) pleaded guilty to Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G). She was sentenced to 36 months of probation.



*Image 1: Screenshot of Exhibit A at 4:04 showing LaCount (outlined in red) and Sunstrum (outlined in yellow) seconds after they entered the Capitol through the Senate Wing Door.*

LaCount entered three minutes after the initial breach of that door. When she first entered, a loud alarm was blaring, and she looked around the hallway where broken glass was on the floor from windows that had been smashed out by other rioters. ECF 37 at ¶ 10.

For the next 74 minutes, LaCount traveled to various areas of the Capitol, including the Crypt, Speaker of the House Nancy Pelosi's office, Rotunda, Statuary Hall, and the hallway immediately outside the House Chamber.

LaCount first walked to the Crypt, where rioters were congregating. She then moved with other rioters from the Crypt to the Office of the Speaker. Inside the Speaker's office space, LaCount stood next to a table that had been flipped on its side as rioters rifled through desks and personal belongings. *See* Exhibit B at 6:30-7:10.



*Image 2: Screenshot of Exhibit B at 6:41 showing LaCount standing in the office next to a flipped over table.*

LaCount left Speaker Pelosi's office at approximately 2:34 p.m. She walked down the hallway, and then entered another private room in the Speaker's suite, as shown in Exhibit C. Smiling, LaCount then walked back down the hallway, as shown in Image 3.



*Image 3: LaCount (outlined in red) smiling as she walks through the hallway of the Office of the Speaker suite.*

5

LaCount then walked through the Rotunda and Statuary Hall, as shown below in Image 4.



*Image 4: LaCount (outlined in red) in Statuary Hall*

At approximately 2:44 p.m., LaCount joined a crowd of rioters in the hallway connecting Statuary Hall and the House Chamber. Other rioters overran police and moved to the vestibule immediately outside the House Chamber Door. Members of Congress, their staff, and police had barricaded the interior of this door for their protection. LaCount did not enter the vestibule area, but she stood adjacent to it. She held up her phone to the crowd attempting to gain entry to the Chamber, as shown below in Image 5 and Exhibit D.



*Image 5: Screenshot of Exhibit D at 00:08 showing LaCount next to the crowd attempting to force their way into the House Chamber.*

At approximately 2:50 p.m., LaCount walked further down the hallway amidst a cloud of pepper spray. *See* Image 6 below and Exhibit E at 2:10-3:07.



*Image 6: LaCount walking through hallway flanking the House Chamber away from spray deployed at the House Chamber Door.*

LaCount turned right at the end of the hallway in the direction of the Speaker's Lobby. *See* Exhibit E at 3:07-3:41. Police yelled to the crowd, "Get out! Keep moving!" LaCount turned around and began to leave.

LaCount exited the Capitol at approximately 3:30 p.m. through the Rotunda Door.

*Social Media Posts*

On January 6 and in the following days, LaCount shared videos and messages on social media. *See* Exhibit F and G (videos shared by LaCount taken in the Rotunda and Crypt showing other rioters standing on statutes, shouting, and smoking). In one conversation, LaCount received a message asking, "You got in the Capitol?!" LaCount responded, "Absolutely!" In the same conversation thread, LaCount stated "Pelosi's office is so gaudy . . . massive chandelier, beautiful fireplace . . . MSNBC live was on every laptop." She also commented that Adam Johnson (21-CR-00648 (RBW)) "was an absolute hoot!"

As shown in Image 7 below, on January 7, in a public message on her Facebook account, LaCount stated that the prior day was "exhilarating" and proclaimed, "Never in my life have I felt so patriotic!!"



*Image 7: LaCount public Facebook posting on January 7, 2021.*

In messages, LaCount further described the day as "incredible!!!!" and stated that her "adrenaline is still pumping!" She falsely claimed in another message that "we didn't riot or loot."

*LaCount's Interview with the FBI*

On August 21, 2024, LaCount was interviewed with her counsel present. She explained that she believes the 2020 Presidential Election was "stolen" and she traveled to Washington, D.C. to attend the rally in support of Donald Trump. She said that she arrived on the evening of January 5, 2021. She met up with five other individuals she got to know at an event at Mount Rushmore in July 2020, including Sunstrum.

LaCount said that her group went to the rally on the morning of January 6 and watched the speech. She said that Trump finished the speech by telling the crowd they were all going to march to the Capitol and that he would meet them there. LaCount and the other members of her group then walked towards the Capitol and waited for Trump.

LaCount said she saw police launching pepper spray and firing rubber bullets into the crowd. She saw rioters moving up the scaffolding, and she followed.

LaCount admitted to seeing police and hearing the alarm of the building when she entered the Capitol. She said the police were not stopping her or the others entering the building. LaCount said that she was excited to be inside the Capitol and admired the beauty of the building.

LaCount said that she did not know her way around the building, but eventually made her way into the Speaker's Office. She stated that she saw the door had been kicked open and said that she told others around her to not break anything because that was not what they were there to do. She said she then exited and continued to explore around the Capitol.

LaCount recalled seeing other rioters in a dispute with police and looked at the women around her and said something to the effect of, "Let's us ladies get out of here . . . ." LaCount said that she later recognized one of the ladies around her as Ashli Babbitt.

LaCount stated that she then entered a room where police were spraying pepper spray, and a police officer guided her to a doorway before officers in riot gear entered. LaCount said that she assisted a police officer wash pepper spray from his eyes. LaCount stated that police officers told her she needed to leave, and she attempted to exit the building. She explained that it was difficult to exit because the area was very congested.

LaCount stated that the event was "a beautiful day that turned into a nightmare." She said that she wishes she had never gone to Washington, D.C., and she would have never gone if she knew what the day would become. She explained that the instant case has had a negative impact on her life.

*LaCount's Recent Social Media Posts*

LaCount has continued to spread falsehoods about January 6 through numerous postings to an account in her name on X, formerly known as Twitter. The account describes her as a "J6 political hostage." As shown below in Image 8, she wrote that former Vice President Pence "needs to pay" and is "the traitor who sealed the deal on the election theft."



*Image 8: LaCount, using the X (Twitter) account @TheTulsaTrish, posting on June 25, 2024*

The postings falsely describe the events that took place on January 6, her involvement, and Capitol Riot prosecutions. Below are some of postings from the account during the past few months:

- In a post on June 14, 2024, she referred to "so many[]J6 patriots currently being persecuted by the federal government."

- In a post on June 19, 2024, she falsely claimed that "[t]he only crimes I saw being committed that day were done by LEOs."

- On July 2, 2024, the day before she pleaded guilty in this case, she made several postings riddled with falsehoods. She stated: "No one attacked the Capitol. We were attacked by police while standing out there, peacefully protesting, then were LET IN by police." LaCount further wrote, "It was the police who attacked peaceful protestors." She also posted, "We weren't told to leave until after 3:30. And when they said it was time to go, we left."

11

- On September 18, 2024, she falsely claimed that government operatives facilitated the riot. She posted, "I watched as antifa looking guys busted open the door to Pelosi's office, then proceeded to trash it. We, the patriots, were telling them to stop, to not take or break anything, saying "we don't do this!"

*The Charges and Plea Agreement*

On November 7, 2023, the United States charged LaCount by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G). On July 3, 2024, pursuant to a plea agreement, LaCount pleaded guilty to Count One of the Information, charging her with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). By plea agreement, LaCount agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

LaCount now faces a sentencing for violating 18 U.S.C. § 1752(a)(1). As noted by the plea agreement and the U.S. Probation Office, LaCount faces up to one year of imprisonment and a fine of up to $5,000. She must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### IV.    The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual

sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR.

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | +4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Acceptance of Responsibility (U.S.S.G. §3E1.1(a)) | -2 |
| Zero-Point Offender (U.S.S.G. §§4C1.1(a) and (b)) | -2 |
| Total Adjusted Offense Level | 2 |

*See* PSR at ¶¶ 37-45.

Section 4C1.1 provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. While the Government concedes that Section 4C1.1 applies to LaCount, the Court should vary upward by two levels to account for the reduction under 4C1.1. An upward variance is necessary because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). LaCount's conduct caused a significant

13

disruption to a vital governmental function, warranting an upward variance. *See United States v. Eicher*, No. 22-cr-038 (BAH), Sentc'g Hrg. Tr. at 48 (varying upward by two levels to offset the Section 4C1.1 reduction).

Although the provision took effect after January 6, 2021, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications of criminal activity have gone mainstream.").

The U.S. Probation Office calculated LaCount's criminal history as 0, resulting in a category I. PSR at ¶ 48. Accordingly, the U.S. Probation Office calculated LaCount's total adjusted offense level, after acceptance, at 2, and her corresponding Guidelines imprisonment range at 0 to 6 months. PSR at ¶¶ 97-97. LaCount's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the

January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## V.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a term of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing LaCount's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like LaCount, the absence of violent or destructive acts is not a mitigating factor. Had LaCount engaged in such conduct, she would have faced additional criminal charges.

LaCount was at the front of the crowd and witnessed mayhem and destruction, yet she remained in the Capitol for an hour and 14 minutes. She entered the building a few minutes after the Senate Wing Door was violently breached, saw rioters destroying property, and walked through tear gas. She entered private office space and was mere feet away from the entrance to the House Chamber and Speaker's Lobby.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  LaCount's History and Characteristics

LaCount's criminal history consists of an infraction for littering in 2017. PSR ¶ 47.

LaCount was previously employed as an accounting clerk and receptionist. PSR ¶¶ 79-80. She has received disability benefits since 2018 due to her medical conditions. PSR ¶¶ 64-65, 67-69, 78.

LaCount has been compliant with his conditions of pre-trial release.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. On January 6, she traveled throughout the Capitol, and she posted afterwards that she felt "so patriotic!!" Although LaCount initially accepted responsibility by pleading guilty, her post-January 6—and even post-plea—statements are troubling and depict someone who is not remorseful. She has repeatedly minimized her conduct and the conduct of other rioters on January 6. In particular, she recently posted on X that former Vice President Pence was a "traitor" and "needs to pay." Her visceral ill will towards the former Vice President of the United States militates in favor of meaningful deterrence.

The Court should therefore view any remorse LaCount expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large

numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

LaCount did not accept the results of the 2020 presidential election, so on January 6 she invaded the Capitol and traipsed throughout the building, including sensitive office space and the area just outside the House Chamber as lawmakers, staff, and police barricaded inside. With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence LaCount in a manner sufficient to deter her specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[3] This Court must sentence LaCount based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

LaCount has pleaded guilty to Count One of the Information, charging her with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. n While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Senate Floor or a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

In *United States v. Matthew Mazzocco*, 21-cr-54 (TSC), the defendant was sentenced to 45 days of incarceration. Mazzocco spent time inside the Spouse's Lounge of the Capitol, where he warned others not to take or destroy anything and said that they were probably going to get in trouble for what they were doing. Gov. Sentencing Mem., *Mazzocco*, 21-cr-54, ECF No. 28 at 6. Similarly, in *United States v. Jon Henegan and Carol Kicinski*, 22-cr-00061 (RBW), the defendants were sentenced to 20 days' incarceration for entering through the Senate Wing Door approximately five minutes after LaCount, entering the Speaker's Office and Speaker's Suite, and leaving approximately 20 minutes after they entered the Capitol.

LaCount's conduct is considerably more troubling than Mazzocco's, Henegan's and Kicinski's. LaCount entered the Capitol earlier and only a few minutes after the Senate Wing Door was breached; she remained in the Capitol significantly longer, during which she saw red flags but continued to penetrate sensitive areas despite seeing pepper spray deployed and rioters attempting to breach the House Chamber door and gain access to the House Floor. She also made statements on social media expressing pride in her actions.

LaCount's conduct is comparable to Mariposa Castro, 21-cr-299 (RBW), who broadcast her entry into the Capitol Building and documented rioters ransacking a private office space. Like LaCount, Castro showed no apparent remorse and attempted to shift blame to others. Whereas Castro falsely blamed "Antifa" and "Black Lives Matter," LaCount has falsely cast blame on law enforcement officers protecting the Capitol. The government requested 60 days' incarceration for Castro; this Court sentenced her for 45 days' incarceration. However, a 60-day sentence for LaCount would not create an unwarranted disparity because Castro was inside the Capitol briefly and LaCount remained for 74 minutes.

The government acknowledges that Traci Sunstrum, who traveled with LaCount and entered the Capitol together with her, received a sentence of probation; the government had recommended 14 days' incarceration. *United States v. Sunstrum,* 21-cr-00652 (CRC). However, Sunstrum was in the Capitol for a much shorter period—30 minutes for Sunstrum as compared to one hour and 14 minutes for LaCount. Moreover, Sunstrum did not enter the sensitive space in the Speaker's Office or hallways outside the House Chamber and Speaker's Lobby.

The instant case is more comparable to Adam Johnson, 21-cr-648 (RBW), who LaCount described as "a hoot." Johnson and LaCount were in many of the same areas at the same time, including the entryway to the House Chamber. Although LaCount's conduct in some ways was

not as egregious as Johnson's in that he temporarily stole and moved the Speaker's podium, tried to open a door to a private office, and encouraged rioters attempting to break down the doors to the House Chamber, Johnson entered the Capitol after LaCount and was in the Capitol for a much shorter time. The government requested 90 days' incarceration for Johnson, and this Court sentenced him to 75 days' incarceration. Because Johnson had several mitigating factors not present in this case, particularly Johnson's expressions of remorse and "early and robust cooperation with law enforcement," a 60-day sentence for LaCount could not create an unwarranted disparity. Gov. Sentencing Mem., *United States v. Adam Johnson*, 21-cr-648, ECF No. 49 at 2.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary

authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that LaCount must pay $500 in restitution, which reflects in part the role LaCount played in the riot on January 6.[5] Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* LaCount's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 115.

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VII.    Fine

LaCount's conviction for violating 18 U.S.C. § 1752(a)(1) subjects her to a statutory maximum fine of $100,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that she is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. PSR at ¶ 91.

## VIII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence LaCount to 60 days' incarceration, 12 months' supervised release, 60 hours of community service, $500 in restitution, and the mandatory $25 assessment. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on LaCount's liberty as a consequence of her

behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Sarah W. Rocha*
        SARAH W. ROCHA
        Trial Attorney
        D.C. Bar No. 977497
        601 D Street NW
        Washington, DC 20579
        Telephone:  202-330-1735
        sarah.wilsonrocha@usdoj.gov

24