UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES :

v. : Crim. No. 23-386 (RBW)

TRICIA LACOUNT :

**MEMORANDUM IN AID OF SENTENCING**

COMES NOW Defendant, Tricia LaCount, through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, and submits that a sentence of one month of home confinement, a period of supervised release (if legally appropriate) or one year of probation, and $500 in restitution would constitute a sentence that is sufficient, but not greater than necessary, to accomplish the goals enumerated in 18 U.S.C. § 3553(a) under the unique circumstances of this case.

***Procedural Background***

Ms. LaCount is before this Court after having pled guilty to one count of Entering & Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). That charge carries a maximum term of imprisonment of 1 year, a fine of up to $100,000, and a term of supervised release of not more than one year.

She was initially arrested on April 18, 2023, in Oklahoma. She appeared before a judge on April 19, 2023, at which time she was released on her own recognizance.

***The Scene Inside and Outside the Capitol that Afternoon***

As is clear from the variety of defendants who have appeared in this courthouse in January 6 cases during the past nearly-four years, different individuals participated in

widely varying levels of activities that day, both on the grounds outside the building, and inside the Capitol itself.

Some, as has been shown in numerous video recordings, were prepared for battle, wearing military-style outfits, carrying different types of weapons (guns, sticks, batons, flagpoles that were used as weapons, pepper or bear spray, etc.) and implements of battle (zip ties, rope, etc…).

A number of individuals had also posted ominous and threatening messages on various social media platforms well before January 6, 2021, indicating that it was time for a civil war, and that they would not accept the official results of the election certified by the 50 States.

It is fair to say that the crowd, generally, was very angry about the outcome of the election, and strongly disagreed with the certification of the vote in the 50 states. Some in the crowd had resolved not to allow a peaceful transfer of power to a new administration.

However, it is equally clear that while some in the crowd were prepared for a physical battle, others went there to shout, scream, and/or protest the official results of the election.

Some entered the Capitol building, while others stayed on the grounds outside the building. A fairly small number of people used violence to break windows and push open doors so that they, and others behind them, could gain entry into the building. And while some people witnessed this initial violent entry into the building as it occurred, the vast majority arrived and entered after windows had already been smashed, and doors had

already been opened. Most also came onto the grounds after various snow fencing and bike racks had been pushed aside or were no longer visible (as barriers).

A number of protestors engaged in physical confrontations with police officers, both inside and outside the Capitol. Some of the interactions were quite violent, and caused injuries to a number of officers (and protestors).

Other protestors destroyed property or otherwise vandalized some areas of some offices inside the building.

As noted above, many people shouted various chants, and some shouted at the police officers who were attempting, often in vain, to keep the crowd from entering further into the Capitol building once the crowd had breached the perimeter.

Some individuals threw flagpoles, stolen police shields, chairs, frozen water bottles, and other objects towards police officers. Some gathered in a lower tunnel (artificially created for the inauguration that was to take place on January 20, 2021) and attempted to push their way into the building at that location.

Others sprayed some officers with various substances, and were otherwise very hostile and demonstrative toward the police, aggressively screaming in their faces.

***Ms. LaCount's "Actions" that Afternoon***

Ms. LaCount's actions at the Capitol on January 6, 2021, reflected none of the foregoing activities.

Like thousands of others that day, she had come to Washington, D.C. to hear the former president speak. During his speech, the former president told people that the 2020

election had been "stolen" from him and that the crowd should march to the Capitol. He claimed he would be there to meet them (he never did).

Ms. LaCount and two women she had previously met then walked to the Capitol, as they had been instructed to do. A while after they arrived at the building, they eventually entered it through the Senate Wing Door.

While in the Capitol, Ms. LaCount was awed by the building's architecture, as she had never been inside the building itself before.

Unfortunately, she did not know her way around the Capitol and consequently followed the crowd from hall to hall. At one point she briefly ended up in the office of former House Speaker Nancy Pelosi. Her presence there was completely by accident, as she did not know anything about the layout of the Capitol and was not searching for that particular location.

While she was briefly in Ms. Pelosi's office, she told others who seemed intent on destroying objects *not* to do so.

When other rioters inside (and outside) the Capitol pushed against a line of officers, Ms. LaCount did not join then. When others shouted at the officers, calling them traitors, she did not join them. Again, she never engaged in any kind of violence whatsoever, whether against individuals or property. She even gave a bottle of water to an officer to help him rinse his tear-gassed eyes.

She admits entering the Capitol and knowing that she was not allowed to be there. Video recordings of her path through the Capitol does not show a woman who looked angry, upset, or enraged, as many other individuals appeared to be.

Significantly, she never encouraged anyone to become violent.

Rather, Ms. LaCount was simply "there," following the crowd wherever it went.

When officers eventually told her she had to leave the building, she started searching for an exit. Unable to find one, she went to a line of officers who were facing inward, blocking an exit, and got the attention of one officer who allowed her to go out that door, then found herself stuck between those officers and another line of officers facing outward. After being tossed about, battered and bruised, she got the attention of one outward facing officer who allowed her to pass through.

It is safe to say that of all the people who entered the Capitol building that day, Ms. LaCount's actions were at the very bottom rung of criminality.

***Analysis of Sentencing Factors***

As this Court knows, pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), not only are the United States Sentencing Guidelines no longer mandatory, they are not even presumptively reasonable.

In determining an appropriate sentence, this Court must consider the factors delineated in 18 U.S.C. § 3553(a), and impose a sentence that:

1) reflects the seriousness of the crime;
2) promotes respect for the law;
3) provides just punishment;
4) deters criminal conduct;
5) protects the public from further crimes, and

6) provides the Defendant with any necessary educational or vocational training, medical care, or other correctional treatment.

In addition, this Court must also consider

1) the nature and circumstances of the offense;
2) the history and characteristics of the defendant;
3) the kinds of sentences available;
4) the sentencing range;
5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and
6) the need to provide restitution to any victims of the offense.

***The Proposed Sentence Would Reflect the Seriousness of the Crime***

This memorandum has already addressed the details of Ms. LaCount's criminal conduct. It has argued that compared to the conduct of all of the other defendants who entered the Capitol on January 6, 2021, her conduct was about as innocuous as any conduct could have been.

She did not assault anyone, destroy any property, push any officers, help others push any officers, throw any object, raise her fist or arm in anger, shout at or berate any law enforcement officer, or remain in an area after she was told to leave.

She also did not destroy any evidence of her participation, as many others did, because she truly did not realize, at the time, how serious it was to enter the Capitol under those circumstances.

Other than her trespass, she never participated in any criminal actions undertaken by others in that vast crowd.

In light of that, she submits that a sentence of one month of home confinement, a period of supervised release or a one year period of probation, along with an order of restitution, would be sufficient, but not greater than necessary, to achieve the goals enumerated in 18 U.S.C. § 3553(a).

***The Proposed Sentence Must Also Promote Respect for the Law, Provide Just Punishment to Ms. LaCount, Deter Criminal Conduct, both by her and by Others, and Protect the Public from Further Crimes***

These goals would be met through the imposition of the proposed sentence under the particular circumstances of this case, for the same reasons presented above.

The government has argued in its sentencing memorandum that "[b]ut for her actions alongside so many others, the riot likely would have failed."

This is a startingly claim that is wholly unsupported by the evidence.

Ms. LaCount should not have entered the Capitol, but her mere non-violent and non-obstructive presence there that afternoon had no bearing on the outcome of events.

She should not have been there, and she has accepted her responsibility for her crime. She greatly regrets being there that day, not just because she has been arrested, but also because of its effect on our country. Ms. LaCount's family has suffered as well. As if that were not enough, she has also personally experienced vicious attacks on social media, and suffered great shame because of all of this.

The government further states in its memorandum that its sentencing recommendation in supported, in part, by her "travel throughout the Capitol for an hour

and 14 minutes, despite observing obvious signs of mayhem, including property destruction and pepper spray." *Gov. Sent. Mem*. at 2.

Defendant emphasizes that as to her presence in the building, however, she told the government in her post-plea debriefing that she "recalled seeing a group of guys having a dispute with law enforcement officers and looked at the ladies around her and said something to the effect of 'let's us ladies get out of here'…"

Ms. LaCount did not go to the Capitol that day to engage in violence. Her judgment as to the level of violence committed by others was no doubt skewed by her personal biases regarding the election and the people she believed supported the former president.

But as the foregoing quote demonstrates, she did not want to be a part of any violence. And when she observed signs of trouble near her, she not only left, but encouraged the women who were with her to leave as well.

Again, this does not excuse her actions up to that point, but it does counteract the government's argument that she did not care about any violence occurring in the Capitol that day.

The government also argues that their sentencing recommendation is buttressed by Ms. LaCount's presence in a sensitive area within the Capitol. But it cannot dispute that she had never been in the building before that day and did not know where she was going at any given time.

The vast majority of people who entered the building that day did not know where any offices were located, or which side of the vast structure was on the House or the Senate side.

Undersigned counsel has been in the Capitol multiple times. And to this day, he could not lead anyone to any particular office or chamber. The building is very confusing, architecturally, and signage is at a minimum.

Thus, to claim that her unknowing presence in the office of former Speaker Nancy Pelosi bears any sentencing significance is inappropriate. She clearly didn't know where she was within the Capitol until she was in the former Speaker's office, and her brief presence there had a calming effect on others who may have been bent on causing harm, as she told people around her not to destroy anything in the office, or to act disorderly, as that was "not what they had come to do". In her mind, she and the others were there to protest, not to destroy property or assault anyone.

As to Ms. LaCount's statements that her experience was "exhilarating" and that she never felt "so patriotic," these must be read in context.

Many people that day were feeling patriotic because of their presence in a large crowd of supporters at the Ellipse – well before anyone's arrival at the Capitol.

One must not forget that many people arrived in Washington, D.C. the day before the January 6 speech, and spent hour after hour in the presence of like-minded individuals both on January 5 and January 6, 2021.

Out of all of those hours, Ms. LaCount was only in or around the Capitol for about an hour and 30 minutes. Thus, viewed in context, her statement is understandable.

She was not, and is not, at all proud of how the behavior of the crowd devolved that day. She stated as such in her post-plea interview when she "described the event as a beautiful day that turned into a nightmare." It was beautiful when people were all together at the Ellipse and sharing their camaraderie, and perhaps even when when they were walking to the Capitol. It turned into a nightmare when people clashed with the police, broke windows, and otherwise turned the afternoon into an out-of-control event.

As she explained to the agent who interviewed her after her plea, she said that "had she known what the day would turn into she would never have gone to [the event]."

With regard to her post-event statements "spreading falsehoods about January 6," counsel points out that millions of people still believe that the former president won the 2020 election.

Ms. LaCount is hardly the only person who still believes the way she does. But that belief does not warrant an increased sentence. She is free to express her beliefs, as false as others may believe they are.

She has never been "in trouble with the law," and this horrific experience will permanently dissuade her from ever committing any type of crime again.

Counsel recalls the protest marches in January 20, 2017, when hundreds of thousands of people marched to protest the election of the former president.[1]

[1] Undersigned counsel represented two separate defendants in connection with that prosecution – one person who was merely marching with the crowd, and another who allegedly broke a huge plate glass window at a Bank of America branch. Thus, counsel is intimately familiar with the facts underlying that prosecution, and is able to make an informed comparison between that event and this one.

During that march, some in the crowd stepped a few feet away from the larger group and broke large plate glass windows in banks and in coffee shops. One could argue that the mere presence of so many angry or passionate people in the crowd of marchers on January 20, 2017, somehow emboldened these (apparently Antifa, based on their clothing) individuals to become violent, but that would not be a fair assessment of the alleged role of the crowd in that march. Nor is it fair to impute the actions of a few others to Ms. LaCount's mere presence.

While it has become a common refrain in January 6 cases to say that "a mob isn't a mob without the numbers," someone who did not attack any police officers or destroy property should not be automatically accused of unwittingly encouraging troubled individuals in the commission their acts.

Given all of that, the sentence proposed above is more than enough to achieve the goals of the sentencing statute.

One further point is in order:

Notably, and perhaps counter-intuitively, respect for the law is actually ***diminished*** when a sentence is unfairly high. Here, people following Ms. LaCount's case could fairly wonder why someone who walked into the Capitol, followed her friend to various places, should receive more than a probationary sentence. Those same people would likely be upset to learn that she has spent more than three months in jail simply because her mental health issues prevented her from participating in the normal pretrial process. Any sentence that exceeds time-served would not be just or fair.

***The Court's Duty to Provide the Defendant with any Necessary Educational or Vocational Training, Medical Care, or Other Correctional Treatment***.

This factor, in this particular case, is extremely important, and strongly supports the proposed sentence of three months' home incarceration rather than incarceration.

That is because Ms. LaCount suffers from a host of physical ailments that require her to take multiple medications. Without those medications, she suffers unspeakable pain. Even with them, she is in constant, but bearable, pain.

It is well-known that the Bureau of Prisons does not dispense the same, or even similar, types of medications than are available to the public. And Ms. LaCount's medication regimen has been carefully calibrated over the course of several years. It is not something that can be discarded without Ms. LaCount's experiencing severe pain or even possibly death, as the medications' dosages have been carefully calibrated and cannot simply be stopped on a whim.

Even going a few days without her medications will leave Ms. LaCount in severe pain and in tears, and could be a death sentence for her.

A cold-hearted person may say that "she should have thought of that before she committed this crime." But that is not how justice should be dispensed in a civilized society.

Again, Ms. LaCount really regrets her participation in the events that took place at the Capitol. Before that day, she had never committed a crime, and never thought she would. For most of that day, and the preceding day, she did not commit any crime. It wasn't until the former president instructed his followers to walk to the Capitol that she

and many others walked to that location. Even then, she did not believe that she was going there to commit a crime.

She was actually in significant pain that day, almost four years ago. Almost four years later, i.e., as of November, 2024, she is in much greater pain than before.

She wouldn't be able to walk for hours today as she did on January 6, 2021.

Defendant is submitting documents concerning her medical condition under seal, but notes, for the purposes of this public memorandum, that her medical condition is a significant factor in her request for home incarceration rather than imprisonment.

The government recommends a sentence of 60 days of incarceration. Ms. LaCount views this as a death sentence, given her very real need for pain medication and other medications.

Thus, this factor supports the sentence Ms. LaCount has requested.

***The Need to Avoid Unwarranted Disparities***

This factor is often the most difficult one to evaluate, given the differences between defendants in cases such as these.

To assist the Court in determining the most appropriate sentence, undersigned counsel spent a considerable amount of time compiling the accompanying sentencing information,[2] including the types of sentences every defendant ever sentenced in this District under the relevant statute has received.

---

[2] *See* attachment entitled "Legros.Christina.breakdown.1752.sentences." Defendant has also attached hereto the entire chart compiled by the Department of Justice showing the sentences imposed to date (as of April 22, 2024) in every single January 6 case, not simply in cases prosecuted under 18 U.S.C. § 1752(a)(1).

As noted, of the 57 defendants sentenced under 18 U.S.C. § 1752(a)(1) as of April 22, 2024, 10 have received probation alone, i.e., not probation with a special condition of home confinement, and 5 others have received sentences of probation or supervised release with either intermittent confinement (i.e., weekends in jail) or home confinement or home detention.

34 defendants have received straight jail time, often followed by a period of supervised release.

The defendants who have received jail time committed very different acts, and/or had a different history, than Ms. LaCount. A review of some of these defendants' sentences, and the stories behind them, will show why Ms. LaCount is not deserving of a sentence of imprisonment when one cmopares her behavior to theirs.

| | |
|---|---|
| Bryan Betancur 21-CR-51(TJK) | 4 months |
| Billy Knutson 22-CR-31(FYP) | 6 months |
| Samuel Fisher. 21-CR-142(CJN) | 120 days |
| Deborah Sandoval 21-CR-195(CKK) | 5 months |
| Jia Liu 21-CR-711(TJK) | 4 months |
| Andrew Morgan 21-CR-313(TJK) | 110 days |
| Matthew Huttle. 22-CR-403(CKK) | 6 months |

1) Bryan Betancur, who received a sentence of 4 months, engaged in the following actions according to the government:[3] a) While on probation, Mr. Betancur twice lied to receive permission to travel to Washington, D.C. to spend time with the Proud Boys at political rallies, first on December 12, 2020, and then on January 6, 2021; b) while at the Capitol on January 6, he climbed

[3] 21-CR-51(TJK), ECF Doc. 39, at 2.

scaffolding that had been erected for the upcoming presidential inauguration on January 20, 2021; c) he entered a sensitive area of the Capitol, specifically, Room ST-2M, which is closed to the public even on days when the public is allowed to enter the Capitol; d) he assisted others in removing furniture from the room, and that furniture appears to have been used by other rioters in a different part of the Capitol grounds as weapons and projectiles against the police; e) he violated the terms of his pretrial release following his guilty plea; f) he lied to the FBI during a post-plea interview and g) he was uncooperative with the probation office as it tried to prepare the presentence report.

2) Billy Knutson, who received a sentence of 6 months in jail, engaged in the following behavior according to the government's sentencing memorandum:[4] a) Mr. Knutson had previously been sentenced to a five-year prison term for felony assault and intimidation with a dangerous weapon; b) he publicly promoted violence and civil war before and after he entered the Capitol building; c) he entered the Capitol building through a broken window; d) he encouraged resistance against the police while at the Capitol; e) after January 6, he used his popular online platform to promote mortal combat in support of his brand of patriotism, and published a music video that includes phrases such as "[w]e may have lost the battle but this fight is far from over. Give me freedom or give me death (making a throat-slitting motion as he utters the

[4] 22-CR-31(FYP), ECF Doc. 29, at 1-9.

second part of the sentence)." Much more could be said about Mr. Knutson, but the foregoing gives this Court an idea of the type of behavior that resulted in the imposition of a 6-month sentence (which seems rather light to undersigned counsel).

3) Samuel Fisher, who received a sentence of 120 days in jail, engaged in the following behavior:[5] a) In the weeks leading up to January 6, 2021, Mr. Fisher glorified and promoted political violence; b) he traveled to Washington, D.C. in early January of 2021 with the intent to impede the certification proceedings, as well as with reason to believe that the events at the Capitol would turn violent; c) he brought at least two firearms to the Washington, D.C. area though he may not have brought them into the city; d) he encouraged one of his Facebook friends to "bring ur guns" on January 6; e) in the days following the attack, he continued to glorify political violence and specifically the violence that occurred at the Capitol on January 6 and his participation in that day's events. Pages 4, 5, and 7 of the government's sentencing memorandum show photographs of the guns and a knife-like weapon that Mr. Fisher displayed on social media around the time he was discussing violence and an upcoming civil war.

4) Deborah Sandoval, who received a sentence of 5 months, engaged in the

[5] 21-CR-142(CJN), ECF Doc. 35, at 1-8.

following behavior according to the government:[6] a) She encouraged her sons and others to join her in Washington, D.C. on January 6, 2021, and indicated in private messages that she was thinking of bringing weapons "because this one could be bad depending on the electoral vote." b) after she entered the Capitol through the Senate Wing Doors, she loudly yelled for Nancy Pelosi to be brought before the angry mob; c) she entered many different parts of the Capitol; d) after January 6, she used social media to glorify the political violence that had occurred on that day, spread disinformation about the riot, claiming it had been peaceful, and boasted about her participation in the riot; and d) after learning that other rioters faced criminal prosecution for their participation in the riot, she deleted evidence of her crimes and told others to do the same.

5) Jia Liu engaged in the following conduct on January 6, and was sentenced to 4 months in prison:[7] a) He entered the Capitol twice, despite the sound of blaring alarms, broken glass on the floor, and the sight of people climbing through windows; b) after he re-entered the Capitol a second time, he stood at the front of a pack off rioters facing officers; c) he only left the building when police forced him out; d) he destroyed evidence of the events that was on his phone; and e) he was charged with additional crimes while out on bond in his case.

[6] 21-CR-195(CKK), ECF Doc. 122, at 2.
[7] 21-CR-711(TJK), ECF Doc. 39, at 1-2 and 7.

6) Andrew Morgan, who was sentenced to 110 days in prison, engaged in the following conduct according to the government:[8] a) He joined the riot early, rallying with the front lines as the job assaulted police lines on the upper West Plaza and the Lower West Terrace; b) he actively berated and threatened law Enforcement as they tried to hold the line against rioters; c) he encouraged people to resist being pushed back as they struggled with the police; d) joined other rioters as they pushed against the police at the Lower West Terrace; e) posted on social media after the riot indicating a lack of remorse; 6) was on legal restraint on a charge of "interfering with public duties" when he committed his offenses at the Capitol.

7) Matthew Huttle engaged in the following conduct, and was sentenced to 6 months in prison for his actions on January 6, 2021:[9] a) despite acknowledging that the area was closed and that police were guarding the area, he stated his intent to enter the Capitol; b) he was at the forefront of violence when rioters overwhelmed and overran the police line on the West Front; c) he joined the mob as rioters berated officers while violently attacking them; d) while in the Capitol, he disobeyed direct orders to leave; e) while in the Capitol, he assisted others rioters in searching for members of Congress; and f) he has an extensive criminal record that demonstrated a pattern and practice of disobeying the law.

---

[8] 21-CR-313(TJK), ECF Doc. 60, at 1-2.
[9] 22-CR-403(CRC), ECF Doc. 48, at 2, 18.

It is amply evident, given the behavior of the foregoing individuals, that Ms. LaCount's conduct does not remotely compare to theirs. And it is further proof that a sentence of home confinement is amply warranted.

***Conclusion***

Ms. LaCount is a woman who suffers from a number of debilitating illnesses, and who came to Washington, D.C. on January 6, 2021, to protest what she viewed as a stolen election.

She did not come to engage in violence, or to destroy any property. She never pushed against any police line, yelled at the police, deleted evidence from her phone, destroyed evidence, violated any conditions of release, or committed any other act other than walking into the building. When she, by happenstance, found herself in the office of former House Speaker Nancy Pelosi, she told others not to damage or destroy anything, as "that is not why" they were there.

They were there to protest, though for many, the protest got out of hand.

Despite the government's claim, she is very remorseful, and never would have come to the Nation's Capital had she known how it would turn out that day.

Her conduct fell within the very lowest of all persons who entered the Capitol. In light of that, as well as her serious medical issues, she asks this Court to sentence her to a period of one month of home confinement, and any other conditions this Court deems appropriate.

Respectfully submitted,

/s/

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail: sfbrennwald@cs.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing sentencing memorandum was sent by ECF, this 4th day of November, 2024, to all parties of record.

/s/

____________________________

Stephen F. Brennwald